USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/29/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

JOSEPH MAHARAJ,

Defendant.

22-CR-0018 -01 (NSR)
24-CV-7719 (NSR)

OPINIONS AND ORDER

NELSON S. ROMÁN, United States District Judge:

Defendant, Joseph Maharaj ("Defendant") filed the instant 28 U.S.C. § 2255 motion seeking to set aside or correct his sentence. (ECF No. 147.) The Government opposed the motion. (ECF No. 173.) For the following reasons the motion is Denied.

The Defendant was charged, along with his co-defendant Shawn Rains[1], in a three count felony indictment with conspiracy to commit mail fraud, mail fraud, and conspiracy to commit money laundering. (ECF No. 2, Indictment.) On March 22, 2023, the Defendant, represented by counsel, appeared before Magistrate Judith C. McCarthy ("MJ McCarthy"), withdrew his previously entered not guilty plea, and pled guilty, pursuant to a plea agreement, to count 1 of the

[1] The Court presided over Co-defendant Shawn Rains trial who was convicted of conspiracy to commit mail fraud, mail fraud, and conspiracy to commit money laundering following a seven-day jury trial. Co-defendant Shawn Rains was sentenced to one hundred and forty-fours (144) months of incarceration, to be followed by three (3) years of supervised release and ordered to pay restitution and forfeiture. As the presiding trial judge of Co-defendant Shawn Rains, the Court heard evidence of Defendant Josph Mahara's participation in the fraud. The testimonial and documentary evidence exposed an elaborate scheme arranged by Defendant Joseph Maharaj and his Co-defendant. Although the evidence revealed that Co-defendant Shawn Rains was the ringleader, Defendant Joseph Maraja played a significant role in the scheme to defraud their former employer OrthoNet LLC ("OrthoNet") of in excess of four million dollars ($4,000,000.00) over the course of approximately eight (8) years. Both individuals held executive positions within OrthoNet. During the relevant time period, Co-defendant Shawn Rains held the position of Executive Vice President overseeing OrthoNet's Claims Focused Claims Review ("FCR"), and Data Management Departments. Defendant Joseph Maharaj reported directly to Co-defendant Shawn Rains and oversaw the FCR Department. The defendants created several shell companies for the purpose of receiving payment from OrthoNet for fraudulent invoices for services never provided to OrthoNet.

felony indictment, conspiracy to commit mail fraud. By Order dated April 17, 2023, the Court approved the Report and Recommendation of the plea allocution before MJ McCarthy. (ECF No. 43.) The Defendant appeared before the Court on June 30, 2023, for sentencing. For the purpose of sentencing, the Court reviewed the U.S. Probation Pre-sentence Report, the Defendant's submission and Government's submission.

In the pre-sentence report, the U.S. Probation calculated Defendant's total offense level under the U.S.S.G. to be thirty (30)[2] and his criminal history category to be one (1). Probation's calculation of the applicable sentencing range was consistent with the Defendant's plea agreement, which assessed a total offense level of thirty (30) and a criminal history of one (1). The applicable guideline range was calculated to be ninety-seven (97) to one hundred and twenty-one (121) months with a maximum term of three (3) years of post-release supervision. Probation recommended a sentence of eighty-four (84) months, three (3) years of supervise release, the imposition of no fine, and restitution and forfeiture each in the amount of $4,034,411.19.

In his written sentencing submission and orally at the sentencing hearing, the Defendant requested that the Court imposed an incarceratory sentence of thirty-seven (37) months, a sixty (60) month downward variance from applicable sentencing guidelines range. Defendant's counsel vigorously argued that the Court should give "priority" to Defendant's character over the sentencing guideline. Defense counsel noted that the sentence range was heavily impacted by amount of the loss, in excess of four million dollars ($4,000,000.00). Defense counsel noted that the Court should take due consideration of the Defendant's acceptance of responsibility by pleading guilty, while also acknowledging that such factor was already taken into consideration in

[2] Because the loss involved approximately $4,034,411.19, pursuant to USSG 2B1.1(b)(1)(J, an 18-level increase was warranted. See, Pre-sentence Report.

calculating the applicable sentencing range. Notably, the Defendant was deducted three (3) levels, pursuant to U.S.S.G. 3E1.1(a) and 3E1.1(b). [3]

Defense counsel further strongly argued that the Court should and must consider the Defendants family situation, including the health and welfare of his wife, who suffered from Lupus and Cardiomyopathy, and that of his daughter, who suffered from seizures as a result of a pineal gland cysts. The daughter also suffered from severe anxiety due to her medical condition. Defense counsel also referenced the Defendant's own medical condition, scoliosis, and his battle with alcoholism. Lastly, the Defense counsel represented to the Court that the Defendant had saved funds to partially repay a portion of funds fraudulently taken.

In its sentencing submission and at the hearing, the Government advocated for a sentence within the applicable guideline sentence of ninety-seven (97) to one hundred and twenty-one (121) months. The Government detailed the elaborate scheme created by the Defendant and Co-defendant Shawn Rains to defraud their former employer, including the creation of three shell companies which fraudulently billed their employer for services never provided. Both the Defendant and Co-defendant Shawn Rains approved the payments to the shell companies.

The Government emphasized that the Defendant held a position of trust in the company he defrauded. Not only did he hold a supervisory position, but he was well educated and well compensated by his employer. The Government also referred to the length of the fraud. The

[3] The Court notes that Defendant's acceptance of responsibility was taken into consideration as a 18 U.S.C. § 3553(a) factor. 18 U.S.C. § 3553(a) provides, in relevant part, that the court, in determining the particular sentence to be imposed, shall consider (1)the nature and circumstances of the offense and the history and characteristics of the defendant; (2)the need for the sentence imposed—(A)to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B)to afford adequate deterrence to criminal conduct; (C)to protect the public from further crimes of the defendant; and (D)to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3)the kinds of sentences available; (4)the kinds of sentence and the sentencing range established for— (A)the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines a federal judge must consider a specific set of statutory factors to impose a sentence that is "sufficient, but not greater than necessary".

fraudulent acts occurred over the course of approximately seven (7) to eight (8) years and did not end until the Defendant "was caught in the act." Lastly, the Government referenced detailed evidence presented at the trial of Co-defendant Shawn Rains which provided further background and context to the Defendant's involvement in the fraud and attempts to cover up the fraud.

Upon consideration of the written submissions, the augments made by the parties and U.S. Probation's recommendation, the Court imposed a below guideline sentence of ninety (90) months imprisonment, to be followed by three (3) years of supervised release. Additionally, the Court imposed restitution and forfeiture in the amount of $4,034,411.19 for each, along with a one hundred dollar ($100.00) special assessment. The sentence imposed, while higher than the sentence recommended by Probation, is lower than the sentence sought by the Government. Additionally, although the average and the median incarceratory sentence for similarly situated defendants was seventy- two (72) months, the sentence imposed was likewise below the sentencing guideline range and just slightly above Probation's recommendation.

The Defendant moves, pursuant to 28 U.S.C. 2255, to vacate, set aside, or correct his sentence on the basis of ineffective assistance of counsel. More particularly, Defendant asserts his counsel failed to adequately argue against the sentencing guidelines, failed to inadequately rebut the assertion that greed was a motivating factor in the commission of the crime; and failed to emphasize and develop mitigating factors (inclusive of his familial situation. The Government opposes the motion on the basis that the Defendant has failed to meet requisite threshold standard as required under *Strickland v. Washington*, 466 U.S. 688 (1984). For the following reasons, Defendant's motion is DENIED.

## LEGAL STANDARD

### I.. 28 U.S.C. § 2255 Standard

A motion under 28 U.S.C. § 2255 is an extraordinary remedy. See *Moyhernandez v. United States*, No. 02 Civ.8062 MBM, 2004 WL 3035479 (S.D.N.Y. Dec. 29, 2004). 28 U.S.C. § 2255(a) provides that:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(b) provides, in relevant part:

If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

A plain reading of the statute contemplates providing a mechanism to detained individuals who seek judicial relief from a wrongly imposed sentence. It is well settled that 28 U.S.C. § 2255 provides a collateral remedy and not a remedy for an appeal such that it can used to challenge the sufficiency of the evidence. See *Dansbay v. United States*, 291 F. Supp. 790 (S.D.N.Y. 1968); see also *Bousley v. United States*, 523 U.S. 614, 621 (1998).

### II. Pleas and Plea Agreements

The Federal Rule of Criminal Procedure § 11(b) provides that before the court may accept a guilty plea, a defendant must be informed of his or her constitutional rights and must demonstrate that the plea is entered voluntarily. Courts have held that for a guilty plea to be

deemed valid, it must be entered into voluntarily, knowingly, and intelligently and "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); see also *McCarthy v. United States*, 394 U.S. 459, 466 (1969). This standard exists because the failure to obtain a valid plea is deemed a violation of a defendant's due process rights. *McCarthy,* 394 U.S. at 466. In addition, the court must determine whether the conduct which the Defendant admits to was committed by the accused and constitutes the offense charged in the Indictment, the charging instrument, or the offense for which the defendant has accepted responsibility for pursuant to a plea agreement. See id. at 467 (citing Fed. R. Crim. P. 11, advisory committee notes).

Plea agreements are generally favored because they tend to conserve valuable prosecutorial resources and defendants tend to receive more favorable terms at sentencing. *Missouri v. Frye*, 566 U.S. 134, 144 (2012). It is a basic core principle that plea agreements are to be interpreted under the same standards of contract law, see *United States v. Rodgers*, 101 F.3d 247, 253 (2d Cir. 1996), bearing in mind, however, that they "are unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards obtain." *United States v. Ready*, 82 F.3d 551, 558 (2d Cir.1996) (quotations and citation omitted), superseded on other grounds as stated in *United States v. Cook*, 722 F.3d 477, 481 (2d Cir. 2013); accord *United States v. Cimino*, 381 F.3d 124, 127 (2d Cir. 2004); *United States v. Aleman,* 286 F.3d 86, 90 (2d Cir. 2002). Words and phrases in the agreement are to be given their plain meaning, see *United States v. Dionisio*, 415 F. Supp. 2d 191, 201 (E.D.N.Y. 2006), aff'd, 503 F.3d 78 (2d Cir. 2007), and terms are to be strictly construed. *United States v. Pollack*, 91 F.3d 331, 335 (2d Cir. 1996). Any ambiguity in the agreement must be construed against the

drafter, typically the Government, see *United States v. Gotti*, 457 F. Supp. 2d 411, 415 (S.D.N.Y. 2006), because "the Government is usually the party that drafts the agreement, and [because] the Government ordinarily has certain awesome advantages in bargaining power." *United States v. Padilla*, 186 F.3d 136, 140 (2d Cir. 1999) (quoting *Ready,* 82 F.3d at 559). In deciding whether a plea agreement has been breached, a court must look to what the parties to the plea agreement reasonably understood its terms to be. *United States v. Carbone*, 739 F.2d 45, 46 (2d Cir. 1984) (quoting *Paradiso v. United States*, 689 F.2d 28, 31 (2d Cir. 1982) (per curiam), cert. denied, 459 U.S. 1116 (1983)).

## III. **Ineffective Assistance of Counsel**

It is well settled that counsel owes her client a duty of loyalty, a duty to avoid conflicts of interest, and when representing a criminal defendant, counsel's role is to assist defendant in his defense within the permissible rules of law. See generally *Strickland*, 466 U.S. at 668. Such assistance includes the duty to advocate defendant's cause, to consult with the accused on all matters of importance and to appraise the defendant of important developments in the course of the prosecution. *Id*. The Sixth Amendment to the United States Constitution "guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings," *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) (quoting *United States v. Wade*, 388 U.S. 218, 227–228 (1967)), which includes the entry of a guilty plea, *Argersinger v. Hamlin*, 407 U.S. 25, 38 (1972), and sentencing. *Mempa v. Rhay*, 389 U.S. 128 (1967). With respect to a negotiated plea, counsel has the utmost obligation to advise his client of "the advantages and disadvantages of a plea agreement." *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) (quoting *Libretti v. United States*, 516 U.S. 29, 50–51 (1995)). At sentencing, counsel's sage advice and forceful advocacy

can serve to minimize a defendant's period of incarceration. *See Glover v. United States*, 531 U.S. 198, 203 (2001).

When evaluating counsel's performance, judicial scrutiny must be highly deferential and must not serve as an opportunity to act as a Monday morning quarterback. *See Strickland*, 466 U.S. at 689. In order to reverse a conviction based on ineffective assistance of counsel, there must be a showing that counsel's assistance was deficient and that such deficiency prejudiced the defense so as to deprive the defendant of a fair proceeding. *Strickland*, 466 U.S. at 687–693. Where the defendant enters a guilty plea upon counsel's advice, the voluntariness of the plea is dependent on whether the advice was within range of competence demanded of attorneys in criminal cases and whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 56, 69. (1985). "In other words, in order to satisfy the prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

Although sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in prejudice because "any amount of [additional] jail time has Sixth Amendment significance." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001). For the purpose of sentencing, "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does *Strickland* require defense counsel to present mitigating evidence at sentencing in every case." *Wiggins v. Smith*, 539 U.S. 510, 533 (2003).

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [] strategy.'" *Strickland*, 466 at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). A defendant claiming ineffective assistance "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690.

**DISCUSSION**

Upon a review of the Defendant's contentions, the Court determines they lack merit. It is well settled law, in order for an accused to prevail on an ineffective assistance of counsel claim, there must be a showing that counsel's assistance was not only deficient but that such deficiency prejudiced the defense so as to deprive the defendant of a fair proceeding. *Strickland,* 466 U.S. at 687–693. Significantly, the Defendant has failed to demonstrate that counsel was deficient. Defendant's mere assertion that counsel's advocacy was not vigorous enough does not amount to legal "deficiency." As documented in his written submission and as reflected in the record, counsel raised most, if not all, of Defendant's contentions at the sentencing hearing. Similarly, the Defendant fails to demonstrate that he was prejudiced. In order to establish prejudice, the defendant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. 694. A reasonable probability has been defined as a probability sufficient to undermine confidence in the outcome. *Id*. For an ineffective assistance of counsel claim at sentencing, the defendant must demonstrate but for counsel's substandard performance, he would have received a less severe sentence.

*Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (internal citation omitted). Although the Defendant alleges multiple instances of alleged deficiencies in his counsel's advocacy, he fails to demonstrate that the deficiencies resulted in prejudice as defined by caselaw. Accordingly, the Court denies Defendant's motion.

## CONCLUSION

For the foregoing reasons, Defendant's motion pursuant to 28 U.S.C. § 2255 to, inter alia, vacate his conviction is DENIED. The Clerk of the Court is directed to terminate the motion at ECF Number 6 in 24-CV-7719 and to terminate the civil action at 24-CV-7719.

The Government is directed to mail a copy of this order to *pro se* Defendant at his last address where he is currently serving his term of incarceration and/or supervised release, and to file proof of service on both the criminal and civil dockets on or before October 07, 2026.

Dated: September 29, 2026
White Plains, NY

So Ordered.

Hon. Nelson S. Roman
U.S. District Court, SDNY